# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | | |
|---|---|---|
| KEITH HERRON, | ) | |
| Plaintiff, | ) ) ) | |
| VS. | ) | No. 15-2145-JDT-dkv |
| D. VOYLES, ET AL., | ) ) ) | |
| Defendants. | ) | |

### ORDER PARTIALLY DISMISSING AMENDED COMPLAINT AND DIRECTING THAT PROCESS BE ISSUED AND SERVED ON DEFENDANT VOYLES

On February 26, 2015, Plaintiff Keith Herron ("Herron"), who is presently incarcerated at the Springfield Medical Center for Federal Prisoners in Springfield, Missouri, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983, accompanied by a motion to proceed *in forma pauperis* regarding actions pursuant to his arrest. (ECF Nos. 1 & 2.) In an order issued March 2, 2015, the Court granted leave to proceed *in forma pauperis* and assessed the civil filing fee pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(a)-(b). (ECF No. 4.) On April 12, 2016, the Court dismissed Herron's complaint and granted leave to amend. (ECF No. 5.) After being granted two extensions of time (ECF Nos. 9 & 11), Herron filed an amended complaint on July 12, 2016 (ECF No. 12). The amended complaint adds no new defendants.

## I. The Amended Complaint

Herron alleges that on May 24, 2014, he was beaten by several MPD officers between residential houses located on North Trezevant Street in Memphis. (ECF No. 12 at 3-4.)

"Minutes later" he was apprehended by the named Defendants, Lawson, Cline, Voyles, Moody, Roseberry, Green, Girouard,[1] Lashley, Crawford, and Sansone as well as other John Doe officers, all of whom had their weapons drawn and ordered him to get on the ground. (*Id.* at 4.) Even though Herron allegedly followed their directions to the letter and did not resist arrest, the officers started beating him, kicking him, and folding his arms and hands together in the middle of his back. (*Id.*) Herron was later walked to an unknown police vehicle by the John Doe officers. (*Id.*)

Herron was transported to the next street by John Doe officers as well as MPD Officers Biggs and Jackson,[2] who are not named as parties in this case. Herron remained in the police vehicle for "hours" while the John Doe officers were "playing with a weapon" that was found during his arrest. (*Id.*) Herron began having signs associated with a seizure ("i.e. smell of flowers, fresh grass cut, flying objects vision, sweating, breat[h]ing hard, fast heart beats, problems with speaking and breat[h]ing deep"), and then he began having a seizure, twisting back and forth, before laying down in the police vehicle. (*Id.*) A John Doe officer looked directly at Herron, closed all the windows, then turned the heater on high before exiting the vehicle. (*Id.*) The John Doe officer returned to his vehicle with Defendants Voyles, Cline, Girouard, Lashley, Moody, Roseberry, Green Crawford, and Sansone. (*Id.*)

At some point thereafter, the aforementioned Defendants and John Doe officers started shouting at Herron to get up, there was nothing wrong with him, and to stop faking because he was facing fifteen years for the weapon. (*Id.* at 4-5.) Herron alleges that while he was

---

[1] In the original complaint, Plaintiff identified this officer as Girouard, but in the amended complaint his name is spelled Givonard.

[2] The original complaint makes no reference to officers named Biggs and Jackson. Rather, it alleges that the police car "was parked on Biggs Street close to Jackson." (ECF No. 1 at 2; ECF No. 1-3 at 2.)

handcuffed, fighting for oxygen, in severe pain and unable to breathe, going into seizures and fighting for his life, Defendant Voyles and a John Doe officer slapped him in the face with their gloves while the other Defendants and John Doe Officers stood watching. (*Id.* at 5.) He states the seizure continued to become more severe. (*Id.*)

Herron asserts that sometime later he was awakened by John Doe officers at the police department parking lot on Crump Street yelling at him to get out of the vehicle. (*Id.*) He alleges that he feared for his life, and his heart was racing before he lost consciousness during a second seizure. (*Id.*) Herron has no memory of what occurred after that second seizure, but he was later told by non-party EMTs with the Memphis Fire Department that John Doe officers had to drag him into the police station because he would not get out of the vehicle on his own. (*Id.*) The John Doe officers also allegedly told the EMTs that if the EMTs took Herron to the hospital, the officers were going to go ahead and charge him because he was faking, there was nothing wrong with him. (*Id.*) The EMTs allegedly told the John Doe officers that they had to take Herron to the hospital because he was non-responsive to their tests that are performed on seizure patients. (*Id.*) Herron woke up in an ambulance with EMTs performing tests on him. (*Id.*) At that time a John Doe officer stated that Herron's wife/girlfriend was coming into town and another John Doe officer stated he did not have time to wait for Herron to return from the hospital, that he was faking. (*Id.*)

Herron alleges he was discharged from the hospital after receiving medical treatment for his seizure disorder and taken to the Jail. (*Id.* at 5-6.) Herron continued to have active seizures at the Jail and was transported numerous times to the hospital for treatment. (*Id.* at 6.)

Herron "attributes his injuries, severe pain, and suffering to all the named" Defendants and John Does "for use of excessive force, denial of prompt medical treatment, and excessive

3

heat created by them." (*Id.*) He seeks money damages and requests the appointment of counsel. (ECF No. 1 at 3.)³

## II. Analysis

The legal standards for assessing whether a complaint states a claim on which relief may be granted and the basic elements required to state a claim under 42 U.S.C. § 1983 were set forth in the Court's order of April 12, 2016, and will not be reiterated here.

As stated in the April 12 order, Herron's claim for use of excessive force effectuated upon arrest is analyzed under the Fourth Amendment's objective reasonableness standard. *Graham v. Connor*, 490 U.S. 386, 394 (1989). The proper application of this standard

> requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.

*Id.* at 396 (citation omitted); *see also Baker v. City of Hamilton, Ohio*, 471 F.3d 601, 606 (6th Cir. 2006). "[T]he ultimate inquiry is whether the totality of the circumstances justifies a particular sort of seizure." *Baker*, 471 at 606-07 (internal quotation marks omitted).

In dismissing the original complaint, the Court found, *inter alia*, that Herron had failed to allege the specific actions taken by each named Defendant, and the amended complaint is little changed. While the amendment alleges that Defendants Lawson, Cline, Voyles, Moody, Roseberry, Green, Girouard, Lashley, Crawford and Sansone all generally participated in the alleged assault, Herron still does not adequately set forth the actions taken by each individual

---

³ With regard to Herron's claims againt the "John Doe" officers, service of process cannot be made on an unidentified party. The filing of a complaint against such a "John Doe" defendant does not toll the running of the statute of limitation against that party. *See Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996); *Bufalino v. Mich. Bell Tel. Co.*, 404 F.2d 1023, 1028 (6th Cir. 1968). In this case, even if Herron were to identify the "John Doe" officers, it appears the statute of limitations has expired. *See* Tenn. Code Ann. § 28-3-104(a)(B).

4

officer. The only specific allegation against a named Defendant is that Defendant Voyles slapped Herron in the face with his gloves when Herron was allegedly having a seizure and trouble breathing in the back of the police vehicle, but that allegation in isolation is insufficient to state an excessive force claim. Therefore, with regard to his allegations of excessive force, Herron has not stated a plausible claim that each individual Defendant's actions were objectively unreasonable under the Fourth Amendment.

Specifically with regard to Herron's claim that he was subjected to excessive force through exposure to very high heat while he was locked in the police vehicle, he attributes that action only to a John Doe officer, not to any named Defendant. Herron also claims that Defendants Voyles and Moody failed to prevent the John Doe officer from exposing him to excessive heat and failed to intervene to stop it. (*Id.* at 12.) While he contends, generally, that Voyles and Moody "observed" and had reason to know what the John Doe officer was doing (*id.*), Herron does not allege that either Voyles or Moody actually saw the John Doe officer turn on the vehicle's heater before leaving Herron inside. Herron also does not allege that either Voyles or Moody saw or heard anything else, prior to the attempt to make Herron get up and get out of the vehicle, that would have alerted them to the fact that Herron had been exposed to excessive heat.

Herron also claims that he requested medical care "while sitting in the police vehicle upon his arrest, but he received none – medical attention at all until he was at the pol[i]ce station." (*Id.* at 13.) While he asserts this claim generally against all of the Defendants, the only allegation against any specific Defendant is that Defendant Voyles saw Herron lying in the back of the police vehicle, fighting for breath, suffering, and going into a seizure but merely slapped Herron's face with his gloves and accused him of faking. (*Id.* at 5, 12-13.)

5

The Court finds that Herron's amended complaint fails to state a claim against any particular named Defendant for denial of medical care under the Fourteenth Amendment's deliberate indifference standard. It is apparent from Herron's allegations that the Defendants, and Defendant Voyles in particular, believed Herron was not really sick and/or having seizures; therefore, they cannot be said to have "drawn the inference" that he had a serious medical need requiring treatment. *Farmer v. Brennan*, 511 U.S. 825, 837-38 (1994).

However, if Herron's claim for lack of medical care is analyzed under the Fourth Amendment's objective reasonableness standard, *see Smith v. Erie Cnty. Sheriff's Dep't*, 603 F. App'x 414, 419 (6th Cir. 2015), the Court finds that he has stated a plausible claim against Defendant Voyles. Voyles allegedly saw Herron in physical distress, struggling for breath and having a noticeable seizure yet failed to provide him with immediate medical care. This allegation is sufficient to withstand screening.

Herron's claims under Tennessee law for assault and battery, negligence and negligence *per se*, and outrageous conduct suffer from the same deficiencies as his federal claims. These claims are not adequately asserted against any individual Defendant based on that Defendant's own specific actions. Therefore, the state-law claims also fail to state a claim.

III. Conclusion

With the exception of the Fourth Amendment claim against Defendant Voyles for denial of medical care, the Court DISMISSES Herron's amended complaint for failure to state a claim on which relief can be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). Process will be issued for Defendant Voyles on the Fourth Amendment medical care claim.

It is ORDERED that the Clerk shall issue process for Defendant D. Voyles, #12350, and deliver that process to the U.S. Marshal for service. Service shall be made on Defendant Voyles

pursuant to Federal Rule of Civil Procedure 4(e) and Tennessee Rules of Civil Procedure 4.04(1) and (10), either by mail or personally if mail service is not effective. All costs of service shall by advanced by the United States.

It is further ORDERED that Herron shall serve a copy of every subsequent document he files in this cause on the attorneys for Defendant Voyles or on the Defendant if he is unrepresented. Herron shall make a certificate of service on every document filed. Herron shall familiarize himself with Federal Rules of Civil Procedure and this Court's Local Rules.[4]

Herron is reminded that he must promptly notify the Clerk, in writing, of any change of address or extended absence. Failure to comply with these requirements, or any other order of the Court may result in the dismissal of this case without further notice.

IT IS SO ORDERED.

                                                    s/ **James D. Todd**
                                                    JAMES D. TODD
                                                    UNITED STATES DISTRICT JUDGE

---

[4] A copy of the Local Rules may be obtained from the Clerk. The Local Rules are also available on the Court's website at www.tnwd.courts.gov/pdf/content/LocalRules.pdf.